**IN THE UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **GURPREET SINGH** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. CIV-26-1816-SLP** |
| | ) | |
| **ROBERT CERNA, et al.,** | ) | |
| | ) | |
| **Respondents.** | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Gurpreet Singh, a citizen of India proceeding with counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition") challenging his detention by the U.S. Immigration and Customs Enforcement ("ICE").[1] (Doc. 1).[2] Chief United States District Judge Scott L. Palk referred the matter to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B), (C). (Doc. 4). In accordance with the expedited briefing schedule, (Doc. 8), Respondents timely filed a Response,[3] (Doc. 11), and the time to reply has passed. As fully set forth below, the undersigned

[1] Petitioner is housed at Diamondback Correctional Facility in Watonga, Oklahoma. (Doc. 1, at 2).

[2] Citations to the parties' filings and attached exhibits will refer to this Court's CM/ECF pagination.

[3] Respondents' Response is not filed on behalf of Fred Figueroa, Warden of the Diamondback Correctional Facility, because he is not a federal official. (*See* Doc 11, at 1 n. 1).

recommends that the Petition be **GRANTED** and that the Court should order Petitioner's **immediate release** subject to the conditions of his prior release on bond.

## I. Factual Background and Procedural History

Petitioner submits, and Respondents do not deny, the following facts. Petitioner is a citizen of India who entered the United States without inspection on or about April 3, 2015. (Doc. 1, at Ex. 2, at 1). On April 21, 2015, ICE instituted removal proceedings against him through issuance of a Notice to Appear ("NTA"), alleging he was an alien present in the United States who had not been admitted or paroled. (*Id.*) An immigration judge released Petitioner from ICE custody on a $10,000 bond, and Petitioner states he complied with all conditions of his release. (Doc. 1, at 6). Petitioner received an Employment Authorization card that is valid from November 19, 2024, to November 18, 2029. (*Id*. at Ex. 1, at 2).

On or about June 26, 2026, ICE re-detained Petitioner while he was working as a commercial truck driver. (Doc. 1, at 7). Petitioner asserts that "Respondents did not provide any written notice explaining the basis for the revocation of his earlier release." (*Id.*) Petitioner also asserts that he was not provided with a bond hearing to assess his flight risk or dangerousness prior to or after his arrest. (*Id*. at 7-8). A master calendar hearing is scheduled before an immigration judge on December 4, 2026. EOIR Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation (last accessed Sept. 1, 2026). Thus, Petitioner does not have a removal order, and the case is pending. (*Id.*)

## II. Petitioner's Claims and Respondents' Responses

Petitioner makes the following claims in support of his Petition:

- **Count I: Unlawful Detention in Violation of the Immigration and Nationality Act ("INA") and Implementing Regulations.** Petitioner alleges his continued detention under 8 U.S.C. § 1225(b)(2) is unlawful and violates the INA because that provision does not apply to non-citizens, like him, who entered the United States and were thereafter detained in the interior of the country. (Doc. 1, at 20). Petitioner alleges he was previously granted bond by an immigration judge pursuant to § 1226(a) and that Respondents revoked his bond without any showing of changed circumstances, entitling him to immediate release, not merely a bond hearing. (*Id*. at 21-23).

- **Count II: Violation of Due Process.** Petitioner alleges his continued detention without an individualized custody determination violates his right to procedural due process. (*Id*. at 23-25).

- **Count III: Violation of the Administrative Procedure Act ("APA").** Petitioner alleges his detention without an individualized custody determination is arbitrary and capricious in violation of the APA. (*Id.* at 25-27).

- **Count IV: Violation of Equal Protection.** Petitioner alleges his detention without an individualized bond hearing, when similarly situated non-citizens have received one, violates his right to equal protection. (*Id.* at 27-29).

- **Count V: Violation of the Suspension Clause.** Petitioner alleges the lack of a meaningful opportunity to challenge his detention before the Immigration Court violates the Suspension Clause. (*Id.* at 29-31).

- **Count VI: Violation of the *Accardi* Doctrine.** Petitioner alleges ICE's disregard for its own regulations violates the principle that executive branch agencies must follow their own binding regulations. (*Id.* at 31-33).

Petitioner asks this Court to (1) declare that Petitioner's continuing detention violates the Constitution and laws of the United States; and (2) grant the writ of habeas corpus and order Petitioner's immediate release from ICE custody. (*Id.* at 33-34). Petitioner argues that the claim here is distinguishable from other claims based on § 1226(a), where a bond hearing rather than immediate release was granted, because his claim independently rests on Respondents' unexplained revocation of an existing bond determination by an

immigration judge. (*Id.* at 21-23). Petitioner additionally asserts that the Due Process Clause protects his liberty interest in freedom from immigration custody and that prolonged detention without a meaningful opportunity to challenge confinement violates the core due process guarantees. (*Id.* at 24-25).

Further, Petitioner requests that the Court prohibit his transfer during the pendency of this action.[4] (*Id.* at 33). Petitioner also requests an award of reasonable attorney fees and costs authorized under the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable authority.[5] (*Id.* at 34).

Respondents concede "that this matter is controlled by" the Tenth Circuit's recent decision in *Santillan Quiroz v. Mullin*, 180 F.4th 1226 (10th Cir. 2026). (Doc. 11, at 1).

---

[4] The decision regarding where to detain non-citizens awaiting removal proceedings is a discretionary power of the Secretary of DHS, 8 U.S.C. § 1231(g)(1), which this Court lacks jurisdiction to review. 8 U.S.C. § 1252(a)(2)(B)(ii). *See Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999) (observing that "the Attorney General is mandated to arrange for appropriate places of detention for [persons] detained pending removal" and holding in a civil rights lawsuit "a district court has no jurisdiction to restrain the Attorney General's power to transfer [ICE detainees] to appropriate facilities by granting injunctive relief"); *see also Lway Mu v. Whitaker*, 18-cv-06924, 2019 WL 2373883, at *5 (W.D.N.Y. June 4, 2019) (citing § 1231(g)(1) and concluding "it does not have the authority to dictate to DHS where Petitioner should be housed"); *Olola v. U.S. Att'y Gen.*, No. 18-CV-00058, 2018 WL 11446892, at *4 (D. Colo. Feb. 22, 2018) (finding that under § 1252(a)(2)(B)(ii) and § 1231(g) "decisions to transfer an alien from one location to another are within the discretion of the Attorney General and therefore may not be reviewed or enjoined by the federal district courts"). Therefore, the undersigned concludes the Court does not have jurisdiction to prohibit Petitioner's transfer to another ICE facility.

[5] To the extent Petitioner may be entitled to EAJA fees and costs as a prevailing party, he must seek those separately after a final judgment. 28 U.S.C. § 2412(d)(1)(B); *see also Daley v. Ceja*, 158 F.4th 1152, 1166 (10th Cir. 2025) (interpreting "EAJA's broad language to unambiguously authorize fees in habeas actions challenging immigration detention"). Accordingly, the Court need not address this request at this juncture.

However, "Respondents request that any order be limited to ordering a bond hearing within seven days." (*Id.*) Respondents do not address any of Petitioner's arguments for immediate release. (*See id.*)

## III. Standard of Review

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). To obtain habeas corpus relief, Petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

## IV. Respondents Violated the INA and its Regulations When they Revoked Petitioner's Bond Without Notice of Changed Circumstances.

Respondents recognize that under *Quiroz*, Petitioner's detention is governed by 8 U.S.C. § 1226(a), and thus he is entitled to a bond hearing. (Doc. 11, at 1). However, when a non-citizen was previously released on bond by an immigration judge pursuant to § 1226(a), as in this case, § 1226(b) is also implicated. Section 1226(b) provides that DHS "at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). Regulations further provide that "[w]hen an alien who, having been arrested and taken into custody, has been released, such release may be revoked at any time in the discretion of the district director [and certain other federal officers] in which event the alien may be taken into physical

custody and detained. If detained, unless a breach has occurred, any outstanding bond shall be revoked and canceled." 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9).

Furthermore, "notwithstanding the breadth of [§ 1226(b)'s] statutory language, the [BIA] has recognized an important implicit limitation on DHS's authority. The BIA has held that 'where a previous bond determination has been made by an immigration judge, no change should be made by a District Director absent a change of circumstance.'" *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1196-97 (N.D. Cal. 2017) (quoting *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (BIA 1981)), *aff'd sub nom. Saravia for A.H. v. Sessions*, 905 F.3d 1137 (9th Cir. 2018).

Judges in this district have recently applied the same principle, and when finding a violation, have ordered immediate release under the previous bond conditions. In *Singh v. Cerna*, No. CIV-26-1194-J, 2026 WL 2364443 (W.D. Okla. Aug. 14, 2026), Judge Jones found that "because officials had previously released Petitioner on bond, 8 U.S.C. § 1226(b) . . . applies. Section 1226(b) prevents officials from interfering with a previous bond determination 'absent a change in circumstances.' Respondents failed to provide any evidence that such a determination had been made before Petitioner's re-detention. . . ." *Id*. at *1. Accordingly, Judge Jones granted the habeas petition and ordered Petitioner's immediate release subject to an order of supervision. *Id*. In *Skutar v. Mullin*, No. CIV-26-0036-HE, Doc. 15 (W.D. Okla. Apr. 24, 2026), Judge Heaton concluded that "while the Attorney General has authority to revoke bond at any time under 8 U.S.C. § 1226(b), 'if an immigration judge has determined the noncitizen should be released, the DHS may not re-arrest that noncitizen absent a change of circumstance,'" and he ordered the petitioner's

immediate release. *Id*. at 2-3 (quoting *Salcedo Aceros v. Kaiser*, Case No. 25-cv-06924-EMC (EMC), 2025 WL 2637503, at *1 (N.D. Cal. Sept. 12, 2025)). *See also Singh v. Grant*, No. CIV-26-289-R, 2026 WL 1483557, at *1 (W.D. Okla. May 27, 2026) (reasoning that "along with the discretion provided by § 236.1(c)(9) to revoke bond at any time 'comes responsibility' to follow proper procedures when doing so;" finding there was no evidence that "Petitioner's bond was revoked by an authorized individual or that he was arrested pursuant to his original warrant;" and ordering immediate release).[6] Thus, where an immigration judge has previously granted a non-citizen bond under § 1226(a), ICE may only revoke that bond when it can show there are changed circumstances, and only certain immigration officials may exercise that discretion.

Based on this record, the undersigned concludes Respondents violated the INA and their own regulations when they revoked Petitioner's bond. No evidence in the record indicates that any authorized official chose to exercise his/her discretion to revoke Petitioner's release on bond. Additionally, there is no evidence that Petitioner was arrested pursuant to his original warrant. Moreover, the record does not reflect any material changes in Petitioner's circumstances; nor do Respondents argue any such changes have occurred. Petitioner alleges that since the immigration judge released him on bond, he has complied

---

[6] Other courts are in agreement. *See e.g. Singh v. Hale*, 2026 WL 765623, at *3 (D. Vt. Mar. 18, 2026) (finding that no change should be made to a previous bond decision "absent a change in circumstances"); *Hernandez-Parrilla v. De Anda-Ybarra*, 2025 WL 3632769, at *5 (D.N.M. Dec. 15, 2025) (same); *Panosyan v. Mayorkas*, 854 F. App'x 787, 788 (9th Cir. 2021) (holding that "absent changed circumstances, such as reinvolvement with the criminal justice system, ICE cannot redetain [the non-citizen]") (citation modified) (citing *Sugay*, 17 I. & N. Dec. at 640).

with conditions of his release, gained employment, and pursued his case before the Immigration Court. (Doc. 1, at 6-7). There is no indication that during this time, Petitioner has become a flight risk or a danger to the community. Accordingly, the undersigned recommends that Petitioner be granted immediate release subject to his previous bond conditions.

## V. Respondents Violated Petitioner's Due Process Rights When They Summarily Revoked His Bond.

Petitioner also claims that his procedural due process rights were violated when he was re-detained without notice or a right to be heard. (Doc 1, at 25). Petitioner states that he has not engaged in criminal activity, violence, or dangerous behavior, and that he consistently cooperated with immigration authorities during his release. (*Id.* at 24). He claims that despite the lack of notice or an individualized determination, he is incarcerated in penal-like conditions in violation of his interest in liberty protected by the Due Process Clause. (*Id.* at 24-25).

"The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690 (internal quotation marks and alterations omitted); *cf. Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("It is well established that the Fifth Amendment entitles aliens to due process of law in the context of removal proceedings.") (internal quotation marks omitted).

This Court analyzes Petitioner's procedural due process claim "in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State . . . ; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted). In examining the necessary process, the Court turns to the three factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). "Just as people on preparole, parole, and probation status have a liberty interest, so too does [a non-citizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969-70 (N.D. Cal. 2019) (first citing *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972) (parolee), and then citing *Gagnon v. Scarpelli*, 411 U.S. 778, 782 (1973) (probation)). *See also Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025) ("When the government grants [a non-citizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment."); *Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'"); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at *3 (D.N.M.

Feb. 27, 2026) (finding "that noncitizens acquire a liberty interest once released from immigration detention"). Respondents deprived Petitioner of his liberty when they revoked his bond and placed him in custody.

Turning to the *Mathews* factors, the undersigned finds that Petitioner has a significant private interest in remaining free from immigration detention after spending years on release granted by an immigration judge. To be sure, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). But that power remains "subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695. And it does not erase Petitioner's significant interest in remaining free from detention. Respondents do not challenge Petitioner's assertions that he was released on bond and that he abided by the terms of his release. During his years of release, his interest in release grew even stronger as he "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. The first *Mathews* factor favors Petitioner.

Second, the undersigned considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of an erroneous deprivation of Petitioner's liberty interest is considerable where he has received no notice of the reason for his bond revocation or opportunity to challenge it, and simple procedures exist that would mitigate those risks. "Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient." *Saqib v. Andrews*, 2026 WL 350830,

at *6 (E.D. Cal. Feb. 9, 2026). Nothing in the record shows that Petitioner received any procedural safeguards to determine whether the revocation of his bond and his detention were justified, and thus Respondents have detained him without any stated cause. This factor weighs in Petitioner's favor. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process."); *see also Gualpa-Lumbi v. Hoover*, 2026 WL 452351, at *11 (N.D. Ohio Feb. 18, 2026) ("[Petitioner] was previously released and permitted to go about living for years in the United States during the pendency of his immigration proceedings before being detained in 2025 ... [which] show[s] that [Petitioner] is at risk of being erroneously deprived of his freedom.").

Finally, the undersigned considers the Government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. "While this Court recognizes that the government has an interest in enforcing immigration laws, the government's interest in re-detaining [P]etitioner without adequate notice and an opportunity to challenge the revocation of his release is low." *Saqib*, 2026 WL 350830, at *6; *see, e.g., Diaz v. Kaiser*, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T[he Court concludes that the government's interest in re-detaining Petitioner ... is 'low,' particularly in light of the fact that Petitioner[ ] has long complied with his reporting requirements."). And the undersigned can discern no significant administrative or fiscal burden associated with placing the burden on the government to follow its own regulations. *See, e.g., Iza*, 2026 WL 67152, at *3.

The undersigned concludes Respondents breached their own regulations and violated Petitioner's due process rights when they summarily revoked his bond. Under these circumstances, it is not merely the denial of a post-arrest bond hearing that warrants habeas relief but the improper re-detention itself. Therefore, an order for a bond hearing would be an inadequate remedy for the ongoing violation of Petitioner's liberty interest; the proper remedy is Petitioner's immediate release from detention subject to the same conditions that governed his earlier release. *See. e.g, Amefia v. Grant*, No. CIV-26-975-R, 2026 WL 2569495, at *1 (W.D. Okla. Aug. 31, 2026) (adopting report and recommendation where magistrate judge "found that because (1) Petitioner previously received a bond hearing at which an Immigration Judge determined he was not a flight risk or danger to the community, (2) Petitioner was thereafter released on bond, and (3) Respondents re-detained him without notice, a hearing, or a material change in circumstances, Respondents have violated Petitioner's due process rights" and ordering immediate release); *Singh*, No. CIV-26-1194-J, 2026 WL 2364443, at *1 (granting immediate release); *Singh*, No. CIV-26-289-R, 2026 WL 1483557, at *1 (same); *Skutar*, No. CIV-26-0036-HE, Doc. 15 (W.D. Okla. Apr. 24, 2026) (same); *Ewere*, Case No. CIV-26-320-SLP, 2026 WL 1623419, at *6-7 (applying *Mathews* factors to grant immediate release when the petitioner had been re-detained without notice after being paroled and released), *report and recommendation adopted by* 2026 WL 1207088.[7]

[7] Because the undersigned recommends granting habeas relief on the basis of Petitioner's INA and due process claims, it is unnecessary to address his APA, equal protection, Suspension Clause, or *Accardi* doctrine claims.

## VI. Recommendation and Notice of Right to Object

For the reasons discussed above, the undersigned recommends that the Petition (Doc. 1) be **GRANTED in Part**. Specifically, the undersigned recommends the Court:

- order Respondents to immediately release Petitioner from their custody under his previous bond conditions;
- enjoin Respondents from re-detaining Petitioner without notice of changed circumstances and compliance with 8 C.F.R. §§ 236.1(c)(9), 1236.1(c)(9);
- order Respondents to submit a declaration affirming they have released Petitioner from custody.

**The undersigned advises the parties of their right to object to this Report and Recommendation by September 10, 2026**, under 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2).[8] Failure to make timely objection to this Report and Recommendation waives the right to appellate review of both factual and legal issues contained herein. *See Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

---

[8] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to Report and Recommendations. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge and terminates the referral unless and until the matter is re-referred.

**ENTERED** this 3rd day of September, 2026.

Amanda L. Maxfield
AMANDA L. MAXFIELD
UNITED STATES MAGISTRATE JUDGE